IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



| | |
|---|---|
| ROBERT and KERRYELLEN HART, | CV 19–08–M–DWM |
| Plaintiffs, | |
| v. | ORDER |
| MOUNTAIN WEST FARM BUREAU MUTUAL INSURANCE COMPANY and DOES 1–10, | |
| Defendants. | |

This case involves an insurance dispute arising out of damage the 2016 Roaring Lion wildfire caused to a residence in Hamilton, Montana. Homeowners Dr. Robert and Kerryellen Hart are suing their insurer Mountain West Farm Bureau Mutual Insurance Company. There are twelve pretrial motions pending. After oral argument on December 19, 2019, the Harts' motions for partial summary judgment are denied, Mountain West's motion to bifurcate is granted, and the various motions in limine are granted in part and denied in part.

## BACKGROUND

The Roaring Lion wildfire began in July 2016 after a small campfire started by teenagers was left unattended while smoldering. (Am. Stip. Facts, Doc. 16 at ¶ 4.) The Harts' residence is located at 1071 Judd Creek Hollow in Hamilton,

1

Montana, which borders the Bitterroot National Forest. (*Id.* at ¶ 5.) Their property includes a 5,842 square-foot home on 13.55 acres. (*Id.*) On July 31, 2016, the Harts were away on a day trip when they learned of the wildfire. (*Id.* at ¶ 6.) They were unable to return home due to evacuations ordered by the Forest Service. (*Id.*)

After the Roaring Lion fire, the Harts timely tendered an insurance claim to Mountain West, which insured them under a Country Home homeowners insurance policy. (*Id.* at ¶¶ 7, 9.) Mountain West paid $335,535.11 under the policy for trees, shrubs, and other plants, personal property, rental expenses, and cleaning services to remediate the smoke damage. (Doc. 16 at ¶¶ 10, 12; Doc. 16-1.) On June 22, 2017, Mountain West attorney Randall Nelson sent the Harts a letter denying further claims for compensation. (Doc. 29-5.) The parties dispute the nature and extent of the covered damage and whether the cleaning and remediation performed under the policy was sufficient. (Doc. 16 at ¶¶ 11–12.)

In December 2018, the Harts sued Mountain West in state court in Ravalli County for bad faith under Montana's Unfair Trade Practices Act ("UTPA") (Count I), breach of contract (Count II), breach of the implied covenant of good faith and fair dealing (Count III), punitive damages (Count IV), and a declaratory judgment regarding the scope of coverage (Count V). (Compl., Doc. 3; Am. Compl., Doc. 4.) Mountain West removed to this Court on January 8, 2019. (Doc. 1.) Count III was later voluntarily dismissed. (Docs. 42, 43.)

2

ANALYSIS

I.  **Harts' Motions for Partial Summary Judgment**

The Harts seek summary judgment that they are entitled to restoration damages and that Mountain West acted in bad faith. A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all evidence and draw all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A.  **Restoration Damages (Doc. 47)**

The Harts argue that they are entitled to restoration damages to return their home to its pre-fire condition. Generally, diminution in value is the appropriate measure of damages for injury to property. *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 165 P.3d 1079, 1086 (Mont. 2007). However, a landowner may recover the cost to restore the property where the injury is temporary, meaning restoration is possible, and the owner has "reasons personal" to prefer restoration, such as a need to continue using the property. *Lampi v. Speed*, 261 P.3d 1000, 1005–06 (Mont. 2011). While Montana's allowance of restoration damages is grounded in tort law, restoration damages may be appropriate in breach of contract cases if (1) they are reasonably foreseeable to the parties, as shown by the terms of the contract, and (2) the conduct underlying the breach *caused* the property damage. *McEwan v.*

3

*MCR, LLC*, 291 P.3d 1253, 1265–68 (Mont. 2012). Here, Mountain West's alleged conduct did not cause damage to the Harts' residence; the Roaring Lion wildfire did. Further, the Harts have not argued that the insurance contract contemplates an award of restoration damages after a breach. Accordingly, the motion for partial summary judgment on restoration damages is denied.

**B.     Bad Faith (Doc. 51)**

The Harts seek summary judgment that Mountain West violated subsections (4) and (7) of the UTPA, Mont. Code Ann. § 33-18-201.[1] The relevant provisions of the UTPA provide,

> A person may not, with such frequency as to indicate a general business practice, do any of the following:
> . . .
> (4) refuse to pay claims without conducting a reasonable investigation based upon all available information;
> . . .
> (7) compel insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds.

*Id.* However, an insurer is not liable if it "had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue." Mont. Code Ann. § 33-18-242(5).

---

[1] They also argue for summary judgment that Mountain West violated subsection (3), but the Act does not authorize a cause of action based on that subsection. *See* Mont. Code Ann. § 33-18-242(1).

4

Reasonableness is generally a fact question for the jury. *Estate of Gleason v. Cent. United Life Ins. Co.*, 350 P.3d 349, 359 (Mont. 2015). Nonetheless, Montana law recognizes two exceptions to that general rule: (1) where no insurance policy was in effect at the time of the injury and (2) where the insurer had a reasonable basis in law and no issues of fact are in dispute. *Id.* Regarding the second exception, "reasonableness is a question of law for the court to determine when it depends *entirely* on interpreting relevant legal precedents and evaluating the insurer's proffered defense under those precedents." *Id.* (quoting *Redies v. Att'ys Liab. Prot. Soc'y*, 150 P.3d 930, 938 (Mont. 2007)). Neither exception applies here. The Harts' argument is that, in denying their claims, Mountain West failed to consider the conclusions of certified industrial hygienist Keith Cron and Dr. Dana Headapohl, M.D., M.P.H. regarding the condition of the residence after the Roaring Lion wildfire. But Mountain West has proffered evidence that it reviewed Cron and Headapohl's reports. (*See* Doc. 68 at ¶¶ 17, 43, 45.) Whether that review was reasonable is a fact question for the jury.

The Harts make two evidentiary arguments in their summary judgment briefing: (1) information learned by Mountain West after the claim was denied on June 22, 2017, is irrelevant, and (2) conversations attorney Randall Nelson had with experts regarding Cron and Headapohl's reports should be excluded as hearsay. However, Mountain West agrees with the June 22, 2017 cutoff date.

5

Further, disputed facts remain even if Nelson's conversations are disregarded, though it is not clear those statements are hearsay. *See* Fed. R. Evid. 801(c) (defining "hearsay"). Because the evidentiary arguments do not alter the analysis, the motion for summary judgment on the bad faith claim is denied.

## II. Mountain West's Motion to Bifurcate (Doc. 40)

Mountain West moves under Federal Rule of Civil Procedure 42(b) to bifurcate the bad faith claim from the breach of contract claim and hold sequential trials before the same jury. As demonstrated by the numerous pending motions in limine, limiting instructions will not suffice to advise the jury of the evidence that is relevant to the bad faith claim but not the breach of contract claim, and vice versa. Accordingly, the motion to bifurcate is granted.

## III. Harts' Motions in Limine

### A. Post-Denial Evidence (Doc. 18)

The Harts' motion to preclude Mountain West from using information obtained after June 22, 2017, to establish that the denial of their claim was reasonable is granted. *See EOTT Energy Operating Ltd. P'ship v. Certain Underwriters at Lloyd's of London*, 59 F. Supp. 2d 1072, 1076 (D. Mont. 1999). Based on the Harts' representations in their briefs and at oral argument, the basis of their bad faith claim is Mountain West's June 22, 2017 denial. That cut-off date

6

will be strictly enforced. This ruling does not preclude such evidence from being used for other purposes, such as impeachment.

## B. Larry Reed (Doc. 25)

The Harts seek to preclude Larry Reed, Mountain West's expert on claims handling practices, from testifying about their conduct during the claims process and from offering scientific opinions. The motion is granted to the extent that Reed is not qualified to testify about the source of odors in the Hart residence, *see* Fed. R. Evid. 702, but denied with respect to the Harts' arguments about the handling of their claim.

## C. Randall Nelson (Doc. 28)

The Harts seek to exclude Nelson's opinions at trial on the ground that he was not timely disclosed. (*See* Sched. Or., Doc. 15 at ¶¶ 1, 8.) However, an untimely disclosure does not result in automatic exclusion. While the Scheduling Order cautions that "[a]n inadequate report or disclosure may result in exclusion of the expert's opinions at trial," (*id.* at ¶ 9(c)), Rule 37 provides the standard:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless*.

Fed. R. Civ. P. 37(c)(1) (emphasis added). Here, the Harts received the letter from Nelson denying their claim on June 22, 2017. (Doc. 29-5.) The letter provided

them with reasonable notice of Nelson's opinions, making the untimely disclosure harmless. The motion in limine is denied.

### D. Advice of Counsel Defense (Doc. 30)

The Harts' motion to preclude Mountain West from asserting an advice of counsel defense is granted per the parties' agreement. However, Mountain West's reliance on legal advice may be a factor in its reasonable basis defense. *See Palmer by Diacon v. Farmers Ins. Exch.*, 861 P.2d 895, 907 (Mont. 1993).

## IV. Mountain West's Motions in Limine

### A. Keith Cron (Doc. 36)

Mountain Wests seeks to exclude three categories of testimony from the Harts' certified industrial hygienist Keith Cron from being considered on the contract claim: (1) opinions that volatile organic compounds and formic acid were present in air samples from the Harts' residence in 2017; (2) opinions on the cause of chemicals present in the residence; and (3) opinions on the remediation of the residence. Admissibility of expert opinion is governed by Federal Rule of Evidence 702, which provides

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

8

>  (c) the testimony is the product of reliable principles and methods; and
>  (d) the expert has reliably applied the principles and methods to the facts of the case.

In its gatekeeping role, the district court must determine that the proffered opinions are both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). Expert opinions are relevant if they "logically advance a material aspect of the party's case." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (internal quotation marks omitted). Expert opinions are reliable if they are the product of sound methods and principles. *Id.* The focus is on the expert's process, not the correctness of his or her conclusions. *Daubert*, 509 U.S. at 595.

District courts have broad discretion in determining how to assess an expert's reliability. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). While the inquiry must be specific to the facts of each case, *id.*, the Supreme Court has identified four factors to consider: (1) whether the theory or technique has been tested, (2) whether the theory or technique has been subject to peer review and publication, (3) the potential error rate, and (4) whether the theory or technique is generally accepted within the relevant scientific community, *Daubert*, 509 U.S. at 593–94. The list is non-exhaustive and may not be applicable in all cases. *Id.* at 594.

Because Cron's deposition and reports are in the record, (Docs. 13-6, 37-1, 37-2, 37-3), a *Daubert* hearing is unnecessary. *See Estate of Barabin*, 740 F.3d at 464. Cron's contested opinions are addressed in turn below.

1. **Volatile Organic Compounds and Formic Acid**

Mountain West seeks to exclude Cron's opinion that formic acid was present in the home at a concentration of .27 micrograms per cubic meter. In early 2017, Cron performed an air quality test using what's called the Toxic Organic ("TO")-17 method. (Cron Depo., Doc. 37-3 at 9.) The air samples were analyzed for volatile organic compounds by an out-of-state laboratory. (*Id.* at 7.) Cron reached his conclusion about the concentration of formic acid based on the data returned from the lab. (*See* Doc. 13-6.)

Mountain West does not argue that Cron is unqualified. Nor could it. Cron graduated from Montana Tech in 2001 with a degree in occupational safety and health science and engineering. (Doc. 37-3 at 2.) He later received a master's degree in industrial hygiene and has been a certified industrial hygienist since 2006. (*Id.*) Based on his education and experience, Cron is qualified to render opinions on the presence of chemicals in the Harts' residence. Mountain West also does not argue that the air quality test Cron conducted or the method he used to collect the samples were flawed. Further, it does not raise any concerns about the lab that tested the samples.

Rather, Mountain West objects to Cron's conclusions about the data. The Court cannot decide the veracity of an expert's conclusions. *Daubert*, 509 U.S. at 595. While the concerns about Cron's opinions are apparent from his deposition, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596. Mountain West's motion regarding Cron's opinions on formic acid is denied.

### 2. Causation

Mountain West seeks to exclude Cron's opinion that certain chemicals found in the home are associated with wildfire. Because Cron did not analyze the source of the chemicals in the Harts' residence, (Doc. 37-3 at 38, 45–46, 58, 60), the motion is granted to the limited extent that he is not permitted to testify that the Roaring Lion fire *caused* chemicals to be present in the Harts' residence. However, his knowledge that certain chemicals are "associated with wildfires" is not an impermissible opinion on causation.

### 3. Remediation

Mountain West seeks to exclude Cron's remediation plan. Specifically, Mountain West argues that Cron has no baseline for measuring the pre-fire condition of the house. Cron's education and professional experience, which includes fire remediation, (*id.* at 59), qualify him to testify about remediating the

11

Harts' residence. Whether his plan is realistic is a question of weight, not admissibility. The motion to exclude Cron's opinions on remediation is denied.

B.   Dr. Dana Headapohl (Doc. 38)

Mountain West seeks to exclude Dr. Dana Headapohl's testimony. Dr. Headapohl is the medical director of the occupational health services program at Providence. (Headapohl Depo., Doc. 76-1 at 5.) Dr. Hart asked her to review Keith Cron's April 15, 2017 report and form an opinion about whether the residence was safe for the family. (*Id.* at 3.) Dr. Headapohl concluded that the residence was uninhabitable. (Doc. 13-8.) However, as Dr. Headapohl conceded in her deposition, the basis for her conclusion—Cron's data—was incorrect. (Doc. 76-1 at 8–11.) Further, she never examined the family and does not know when or how often the Harts entered the house after the fire. (*Id.* at 6, 10–11.) Dr. Headapohl's conclusions, based only on the repudiated Cron report and second-hand information, are not reliable. Unlike with Keith Cron, the key issue with Dr. Headapohl's opinions is that their foundation is flawed, not merely the result, such that they cannot be adequately subject to cross-examination. Accordingly, Mountain West's motion is granted.

C.   Dr. Robert Hart (Doc. 44)

Mountain West seeks to preclude Dr. Hart from offering expert testimony on air quality and medical issues because his opinions were not timely disclosed and,

12

in any event, are unreliable. Dr. Hart was disclosed as a non-retained expert. The broad disclosure, (Doc. 45-1 at 5), does not comply with the Scheduling Order's directive to supply "a summary of the facts and opinions to which the witness is expected to testify." (Doc. 15 at ¶ 9(b)(ii).) However, the disclosure was filed on September 30, 2019, pursuant to the parties' stipulated deadline. (Doc. 45-1; Doc. 33-5.) Mountain West did not file its motion in limine until November 13, 2019, nearly seven weeks after the disclosure. (Doc. 44.) Accordingly, Mountain West's objection to the sufficiency of the disclosure is waived. (Doc. 15 at ¶ 9(c).)

Mountain West next argues that Dr. Hart is unqualified to offer expert testimony and that his financial stake in the case renders his opinions inherently unreliable. However, Mountain West has not identified any specific opinions that should be excluded. Dr. Hart's training and experience as a physician, including as an army surgeon treating toxic exposure, qualify him to discuss the medical effects of chemical emissions. (Hart Depo., Doc. 45-2 at 6–9.) But whether specific opinions are outside the scope of his expertise or too prejudicial given his role in the case cannot be determined in the abstract. Accordingly, Mountain West's motion in limine regarding Dr. Hart is denied subject to renewal with the appropriate objection at trial.

### D. Jacob Devries (Doc. 55)

Mountain West seeks to preclude Jacob DeVries from testifying about the cause of property damage at the Harts' residence. DeVries has been a general contractor, building high-end homes and cabinets, for twenty years. (DeVries Depo., Doc. 56-1 at 3, 7, 22.) The Harts contacted him after the Roaring Lion fire about replacing the outbuildings that had burned. (*Id.* at 4.) He eventually provided them with a bid to repair all the damage he determined was caused by the fire, (Doc. 13-5 at 2–7), though he did not complete any work, (*see* Doc. 56-1 at 22). DeVries concluded that nearly all the wood in the interior of the house needed to be replaced due to a condition called case hardening, where the wood does not retain moisture. (*Id.* at 19; Doc. 13-5 at 2.) According to DeVries, the source of the case hardening in the Harts' residence is the loss of moisture due to excessive heat from the Roaring Lion fire. (Doc. 56-1 at 19.) Mountain West argues that DeVries opinion about the cause of the case hardening should be excluded because he is not qualified, he does not have any data about the temperatures to which the house was exposed during the fire, and his moisture tests are unreliable.

DeVries's two decades of experience working in the construction industry qualify him as an expert in how wood responds to certain conditions, even if he cannot explain the molecular science at the root of case hardening. (*See id.* at 19, 22.) His examination of the Harts' residence and the Andre residence, which had

14

similar exposure to the fire, his discussions with the Harts and the engineer at the Andre residence, and his understanding of home construction and the way wood responds to environmental conditions support his conclusion that the heat from the Roaring Lion fire damaged the wood, even absent a temperature measure. Finally, DeVries's moisture tests are reliable. His testimony displays that he has knowledge of how to use the moisture reader and an understanding of the margins of error. (*Id.* at 5–6.) Mountain West's motion in limine regarding Jacob DeVries is denied.

### E. Pretrial Evidentiary Issues (Doc. 59)

Mountain West's final motion in limine seeks to exclude four categories of evidence, which are addressed in turn below.

#### 1. Expert Reports in the Claim File

Mountain West's motion to exclude the expert reports in the claim file from the contract claim is granted. *See* Fed. R. Evid. 801(c).

#### 2. Non-Retained Expert Opinions in the Contract Claim

Mountain West's motion to preclude the Harts' non-retained experts Steve Brackman, Chris Laity, and Dr. Headapohl from testifying on the contract claim is granted per the parties' agreement.

### 3. Evidence Concerning the Andre House

Mountain West seeks to exclude evidence concerning the Andre residence. As discussed above, the Andre residence experienced similar exposure to the Roaring Lion fire. The Andres' insurer purportedly compensated the Andres for the full value of the residence. (Devries Depo., Doc. 56-1 at 25.) Another insurer's actions with respect to another residence under another insurance policy are irrelevant to this case. The motion is granted to the extent that testimony about the insurance claims and settlement involving the Andre house is excluded. However, damage to the Andre residence may be relevant foundation to Jacob DeVries's opinions about the Harts' residence.

### 4. Evidence or Argument of Pre-Fire Conditions

Mountain West's broad motion to exclude all evidence of the residence's pre-fire condition is denied because it cannot be evaluated outside the trial context.

### CONCLUSION

IT IS ORDERED that the Harts' motions for partial summary judgment (Docs. 47, 51) are DENIED.

IT IS FURTHER ORDERED that Mountain West's motion to bifurcate (Doc. 40) is GRANTED. The contract claim and bad faith claim will be tried sequentially, in that order, before the same jury.

IT IS FURTHER ORDERED that:

1. The Harts' motions in limine on post-denial evidence and the advice-of-counsel defense (Docs 18, 30) and Mountain West's motion in limine on Dr. Headapohl (Doc. 38) are GRANTED;

2. The Harts' motion in limine on Larry Reed (Doc. 25) is GRANTED IN PART with respect to scientific opinions and DENIED in all other respects;

3. Mountain West's motion in limine on Keith Cron (Doc. 36) is GRANTED IN PART with respect to the cause of chemicals in the residence and DENIED in all other respects;

4. Mountain West's motion in limine on pretrial evidentiary issues (Doc. 59) is GRANTED IN PART with respect to the claim files and non-retained experts on the contract claim, and the Andres' insurance settlement and DENIED in all other respects;

5. The remaining motions in limine (Docs. 28, 44, 55) are DENIED.

DATED this 20th day of December, 2019.

*/s/ Donald W. Molloy* 13:47 P.M.
Donald W. Molloy, District Judge
United States District Court